IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

A.K. a minor by her                )
parents and next best friends,     )
S.K. and P.K.,                     )
                                   )
                                   )
              Plaintiff,           )
                                   )
       v.                          )    No. 03 C 7071
                                   )
G.V. and E.V.,                     )
                                   )
              Defendants.          )

## MEMORANDUM OPINION AND ORDER

Plaintiff, A.K.,[1] a minor, appears by her parents and next friends.[2] In 2002, when plaintiff was six years old and on a vacation in Florida, a 15-year-old boy (T.V.) allegedly mistreated plaintiff. Named as defendants are T.V.'s parents, G.V. and E.V. Defendants are alleged to be liable for negligently supervising their child. The parties agree that

---

[1]In the interests of the minor plaintiff and to protect the confidentiality of events involving defendants' son when he was a minor, this is a modified version of this court's ruling that will be filed in the public record. A full version of today's ruling is being filed under seal and has been mailed to the parties' attorneys. The modified version leaves out much of the factual detail and uses only the initials of the persons involved.

[2]For simplicity in presentation, A.K. will be referred to as the plaintiff.

Florida tort law applies to this claim. Cf. A.K. v. G.V., 2004 WL 1093474 (N.D. Ill. April 30, 2004). Defendants have moved for summary judgment.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. Scott v. Harris, 127 S. Ct. 1769, 1774, 1776 (2007); Scaife v. Cook County, 446 F.3d 735, 738-39 (7th Cir. 2006). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Creditor's Committee of Jumer's Castle Lodge, Inc. v. Jumer, 472 F.3d 943, 946 (7th Cir. 2007); Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which she will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Jumer, 472 F.3d at 946; Cady v. Sheahan, 467 F.3d 1057, 1061 (7th Cir. 2006), cert. denied, 127 S. Ct. 2947 (2007). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See Yasak v. Retirement Board of Policemen's Annuity & Benefit Fund of Chicago, 357 F.3d 677,

679 (7th Cir. 2004); NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir.), cert. denied, 515 U.S. 1104 (1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir.), cert. denied, 488 U.S. 852 (1988); Shyman v. UNUM Life Insurance Co. of America, 2004 WL 609280 *2 (N.D. Ill. March 25, 2004), aff'd, 427 F.3d 452 (7th Cir. 2005). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" Logan, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." Id. (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under

> governing law will properly preclude the entry of
> summary judgment." McGinn v. Burlington Northern
> R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996)
> (citation omitted). Furthermore, a factual
> dispute is "genuine" for summary judgment
> purposes only when there is "sufficient evidence
> favoring the nonmoving party for a jury to return
> a verdict for that party." Anderson v. Liberty
> Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505,
> 91 L. Ed. 2d 202 (1986). Hence, a "metaphysical
> doubt" regarding the existence of a genuine fact
> issue is not enough to stave off summary
> judgment, and "the nonmovant fails to demonstrate
> a genuine issue for trial 'where the record taken
> as a whole could not lead a rational trier of
> fact to find for the non-moving party . . . .'"
> Logan, 96 F.3d at 978 (quoting Matsushita Elec.
> Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
> 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538
> (1986)).

Outlaw, 259 F.3d at 837.

Under Florida law, a parent is not liable for torts of a minor child solely based on paternity. Gilbert v. Merritt, 901 So. 2d 334, 336 (Fla. Dist. Ct. App. 2005) (quoting Seabrook v. Taylor, 199 So. 2d 315, 317 (Fla. Dist. Ct. App. 1967)); K.C. v. A.P., 577 So. 2d 669, 671 (Fla. Dist. Ct. App. 1991) (per curiam) (quoting Gissen v. Goodwill, 80 So. 2d 701, 703 (Fla. 1955)). A parent, however, will be liable for the torts of a child "where the parent fails to exercise control over the minor child although the parent knows or with due care should know that injury to another is possible." Snow v. Nelson, 475 So. 2d 225, 226 (Fla. 1985) (per curiam). Accord Thompson v. Baniqued, 741 So. 2d 629, 632 (Fla. Dist. Ct. App. 1999). This

exception, however, is very narrow. It is limited to situations in which the parent knew or should have known "the child had a habit of engaging in a particular act or course of conduct which led to the plaintiff's injury." Snow, 475 So. 2d at 226; Thompson, 741 So. 2d at 632; K.C., 577 So. 2d at 671; Brown v. Seebach, 763 F. Supp. 574, 581 & n.1 (S.D. Fla. 1991). The prior acts need not be identical to those causing the injury that is the subject of the lawsuit, but the prior conduct must have been habitual and involve sufficiently "similar acts." Gissen, 80 So. 2d at 705. The prior act or acts of the child must have put the parent on notice that the child would possibly cause the injury that is the subject of the present suit. Pardo v. Carhart, 546 So. 2d 1142, 1142 (Fla. Dist. Ct. App. 1989) (per curiam). In other words, the injury that occurs must be reasonably foreseeable by the parent. See Gissen, 80 So. 2d at 704 (quoting Condel v. Savo, 350 Pa. 350, 39 A.2d 51, 52 (1944)); Wells v. Hickman, 657 N.E.2d 172, 178 (Ind. Ct. App. 1995).[3]

---

[3] Indiana follows the same common law rules for negligent failure to control by parents as does Florida. See, e.g., Wells, 657 N.E.2d at 176-78 (following K.C., 577 So. 2d at 671). Florida's seminal case on the issue of negligent supervision by parents cited to the Restatement of Torts § 316 (1939). See Gissen, 80 F.3d at 703. Other jurisdictions follow the same provision (which is now in the Restatement (Second) of Torts § 316 (1965)) and, like Florida, apply a "particular acts" requirement. See, e.g., Nielsen v. Spencer, 287 Wis. 2d 273, 704 N.W.2d 390, 395 (Wis. Ct. App. 2005) (collecting cases); Wells, 657 N.E.2d at 178; Parsons v. Smithey, 109 Ariz. 49, 504 P.2d 1272, 1275-76 (1973). See also Restatement (Second) of

See generally McCain v. Florida Power Corp., 593 So. 2d 500, 502-03 (Fla. 1992) (in distinct ways, foreseeability is an aspect of both legal duty and causation).

Defendants contend plaintiff's claim fails because their son's prior misconduct was not similar enough to the particular acts of misconduct underlying plaintiff's claim. Defendants also raise the related argument that their son's conduct toward plaintiff was not foreseeable.

Before reciting the facts of this case, it is noted that, regarding many of the factual statements adequately supported by the evidence cited in defendants' Rule 56.1(a)(3) Statement of Facts, plaintiff asserts the statement is in dispute based on the adverse inference that can be drawn based on T.V. having invoked the Fifth Amendment for his deposition. Plaintiff, however, does not provide the questions as to which T.V. invoked his right to remain silent nor explain what inference should be drawn since no deposition was taken. While it is possible to apply the adverse inference when a non-party invoking the right is the child of a party, plaintiff does not make the necessary arguments or provide the necessary supporting facts to draw such an inference. See generally LiButti v. United States, 107 F.3d 110, 123-24 (2d Cir. 1997); State Farm Mutual Automobile Insurance Co. v. Abrams, 2000

---

Torts § 316 Reporter's Notes ("There must . . . be some specific propensity of the child, of which the parent has notice.").

WL 574466 *6 (N.D. Ill. May 11, 2000). No fact will be considered in dispute based on plaintiff seeking to apply an adverse inference based on T.V.'s decision not to answer questions at a deposition. Also, simply asserting a fact is disputed without citing contrary evidence or pointing out that defendants' cited support is deficient does not support a genuine factual dispute. See Murray v. Indymac Bank, F.S.B., 2007 WL 2741650 *7 (N.D. Ill. Sept. 13, 2007); Keck Garrett & Associates, Inc. v. Nextel Communications, Inc., 2007 WL 257638 *3 n.10 (N.D. Ill. Jan. 24, 2007).

Resolving all genuine factual disputes and drawing all reasonable inferences in plaintiff's favor, the facts assumed to be true for purposes of summary judgment are as follows. The incident that is central to this complaint occurred on March 29, 2002 at the outdoor pool area of a Florida condominium complex. At the time, plaintiff was six years old and vacationing with her parents and grandparents. Defendants, who reside in Illinois, were on vacation with their children, including T.V. who was then 15 years old. The V.'s had been vacationing at this same location for nine or ten years.

On the afternoon of March 29, T.V. was at the condominium pool with his father, G.V. Plaintiff was there with her father and grandparents. T.V. requested a key from G.V. to get into a

facility in the pool area. T.V. was gone at least 15 minutes.[4]
While T.V. was gone, G.V. occasionally glanced in that area, but
T.V. was inside a building without windows so G.V. could not see
what T.V. was doing. While gone, T.V. had an encounter with
plaintiff. T.V. exited the building and was spotted by his
father. Shortly thereafter, plaintiff screamed and came out of
the building.

Shortly after plaintiff screamed, G.V. asked T.V. if he
had done anything, but T.V. denied any involvement. T.V.'s
denial did not satisfy G.V., who took T.V. over to plaintiff's
family and asked if T.V. was involved. Initially, plaintiff
answered that she did not know if he was the one. Subsequently,
T.V. confessed to a detective. T.V. also told his father what
happened.

Prior to March 2002, both defendants were aware of two
incidents that T.V. engaged in that involved younger children.
T.V. admitted the incident with one of the children and

---

[4]Testimony varies regarding how long T.V. was gone.
Genuine disputes must be resolved in plaintiff's favor, which
would be the longest time supported by the testimony. In
response to summary judgment, plaintiff contends it was 15
minutes. There is sufficient evidence to support that
contention. T.V. told a detective he was in the sauna for five
minutes before going to another room. One person testified that
plaintiff was away for up to 10 minutes. T.V. was in the room
where he encountered plaintiff for at least a few minutes before
plaintiff arrived. A reasonable finder of fact could find that
T.V. was gone for 15 minutes or more.

eventually stipulated to a single criminal count. On August 25, 2000, he was adjudicated delinquent and sentenced to three years' probation. T.V. was required to participate in treatment to the extent directed by Juvenile Court Services. "CYN" was designated as the provider of treatment. The sentencing order expressly provides that T.V.'s parents are to "cooperate with the parental component of the Administrative Sanctions Program/Juvenile Court Services" and that they are to report any violations of the sentencing order. The sentencing order prohibited T.V. from having any unsupervised contact with children under age 12.

Prior to being adjudicated delinquent, defendants took T.V. to a family therapist for counseling. The therapist advised defendants that he did not think T.V. was in serious trouble.[5] On September 12, 2000, T.V. began his treatment at CYN. T.V. attended weekly group therapy sessions and both parents attended monthly family sessions. Defendants were also provided with reading materials which they both read. Defendants learned from these materials that there was a continuing risk that T.V. would reoffend. One of the recommendations for avoiding a new offense

---

[5] Plaintiff objects that this is inadmissible hearsay. However, it is not offered for the truth of the therapist's opinion, but to show what information defendants were provided. Opinions of therapists that were conveyed to the defendant parents may be relevant to whether the injurious conduct that occurred was foreseeable. See Parsons, 504 P.2d at 1276-77; Wells, 657 N.E.2d at 178.

was to keep the offender out of situations where he or she would have the opportunity to reoffend, such as being alone with children.

In a November 7, 2001 report to the court,[6] T.V.'s probation officer reported that he had no problems at home or in school. She also reported that he was doing well at CYN and participating positively in group therapy.

In preparation for a March 22, 2002 court hearing, T.V.'s probation officer received a March 5, 2002 letter from a psychologist at CYN. The psychologist sent defendants a copy of the letter. The psychologist wrote, in part:

> . . . Since his review date in November 2001, T.V. has been punctual and regular in attendance. While T.V. is not our most active group member, he has established a quiet strength in the group and continues to demonstrate good leadership qualities. Over the past few months his strength has been particularly evident as he has confronted peers in an open, empathic manner. T.V. has also shown a thorough understanding of concepts and has made excellent progress in his application of this knowledge. This was particularly evident as T.V. presented an updated layout in which he showed a comprehensive understanding of his motivation for committing his offense, as

---

[6]This document may be considered on summary judgment since it would be admissible in evidence. See Fed. R. Evid. 803(8), 803(6), 803(4); United States v. Hall, 419 F.3d 980, 987 (9th Cir. 2005); United States v. Walker, 117 F.3d 417, 420-21 (9th Cir. 1997); United States ex rel. Collins v. Welborn, 79 F. Supp. 2d 898, 906 n.5 (N.D. Ill. 1999), aff'd sub nom., Bracy v. Schomig, 286 F.3d 406 (7th Cir. 2002) (en banc).

> well as an increasing responsibility for his
> thoughts and how they related to his
> offense. . . .
> T.V. is in the final stage of Phase II
> (e.g., completing a long difficult workbook
> chapter) and I anticipate that he will be
> promoted to Phase III by the end of the
> month.

While on probation, T.V. had previously received permission to travel out of state. This included a family vacation to the same condominium complex in March 2001. During that trip, T.V. went to the pool with his parents and went alone to the same building without any incident.

On March 29, 2002, G.V. was aware that children under 12 were in the pool area. On that day, and during prior trips, G.V. had never observed any child under 12 going alone to use the building where the incident with plaintiff occurred.

The first question to consider is whether the incident with plaintiff was similar enough to his past habits to satisfy the "particular acts" requirement. In Snow, the Florida Supreme Court reaffirmed that the narrow "particular acts" requirement set forth in Gissen continued to apply to claims that a parent negligently failed to control his or her child. "Appellants urge that this narrow application works an injustice and should be receded from. We disagree and see no reason to recede from Gissen." Snow, 475 So. 2d at 226.

In Gissen, the defendants and their family resided at a hotel and defendants knew their eight-year-old girl had the tendency and propensity to strike, knock down, and damage furniture and furnishings and also to disturb and harass other guests. The injury that was the subject of the suit was slamming a door on a hotel employee's hand with such force that a finger was severed. Gissen, 80 So. 2d at 702. After describing the Restatement and cases from other jurisdictions, the Florida Supreme Court noted that "[o]ne common factor from the foregoing cases appears salient in the assessment of liability to the parents, that the child had the habit of doing the particular type of wrongful act which resulted in the injury complained of." Id. at 705. It was held that "[t]he deed of a child, the enactment of which results in harm to another and which is unrelated to any previous act or acts of the child cannot be laid at the door of the parents simply because the child happened to be born theirs. However, a wrongful act by an infant which climaxes a course of conduct involving similar acts may lead to the parents' accountability. A deed brought on by a totally unexpected reaction to a situation which is isolated of origin and provocation could not have been foretold or averted and hence could not render the parents responsible." Id. While some of the general statements in Gissen indicate it may be sufficient that the type of conduct is similar, the actual holding of Gissen

makes clear that the particular prior acts (not just the type of conduct) must be very similar to the injurious acts underlying the claim. In Gissen, it was not sufficient that the child had a known propensity to engage in destructive conduct without regard to the damage done to hotel furnishings because there was no allegation that the child "had a propensity to swing or slam doors at the hazard of persons using such doors." Id. In Snow, the prior acts and injurious acts underlying the claim were even closer in nature, but still insufficient to support a claim. In Snow, the child had a known propensity to be rough with smaller children by pushing or hitting them. The injury at issue was caused by defendants' child hitting a smaller child with a swinging croquet mallet. It was held that the threshold "particular acts" requirement was not satisfied because there was no allegation that any of the prior hitting was done with a croquet mallet. Snow, 475 So. 2d at 226. In Pardo, 546 So. 2d at 1142, the Florida District Court of Appeal held that, in light of Gissen and Snow, prior acts of throwing a mask that struck another child in the face and a shoving incident on a bus were not sufficient to support a claim that the child had injured another child's eye by punching him in the face during a fistfight since there was no evidence of previously engaging in a fistfight.

Cases from other jurisdictions that apply a "particular acts" requirement similar to that applied in Florida are also instructive. In Parsons, 350 S.W.2d at 1277, the Arizona Supreme Court held that evidence of prior conduct known by the defendant parents was insufficient to make reasonably foreseeable that their teenage child would engage in acts as violent and vicious as those underlying the claim in the case. The injurious conduct was that the teenager committed a home invasion in which he threatened a mother and her daughters, beat the mother with a hammer, cut the mother with a knife (including nearly severing her ear), and demanded that the mother take off her clothes and lay down on the floor. See id. at 1273. The evidence of prior conduct known to the parents was that (a) the teenager had once told a woman on the street to remove her clothes and threatened to throw rocks at her when she refused; (b) he was a behavioral problem in school where he poked and pummeled other children and acted aggressively; (c) he had once forced his way into a classmate's home and shoved her around; and (d) the parents had been repeatedly advised he needed psychiatric or other counseling. See id. at 1275. In Wells, 657 N.E.2d at 177-78, the Indiana Court of Appeals held that knowledge that their son/grandson had killed a pet dog and pet hamster within the past year, admitted to being full of anger, exhibited uncontrollable anger, had been in a fight at a school, and was in need of

counseling was not a basis for holding his mother/grandparents liable for his murder of a playmate with whom he had previously had no problems. In <u>Shepard v. Porter</u>, 679 N.E.2d 1383, 1389-90 (Ind. Ct. App. 1997), the court held that the fact that the boys who engaged in the misconduct had "mischievous, reckless, heedless, or vicious and malicious dispositions, and reputations for possessing such dispositions" did not support a claim based on a fire they set since there was no evidence their parents were aware they had previously set any fires.

Here, T.V.'s prior incidents of misconduct were dissimilar to the incident involving plaintiff. The prior incidents occurred in situations where T.V. had more control over the other children. There is no evidence of T.V. having previously committed the same actions that he did in the incident involving plaintiff. <u>Snow</u> makes clear that prior behavior that is in the same general category as the later injurious conduct, such as hitting smaller children in <u>Snow</u> or mistreating younger children as in the present case is not particular enough to satisfy the particular acts requirement. In <u>Snow</u>, particularity required that defendant's child have previously used the same instrumentality to injure other children. Here, the mistreatment of plaintiff is not the same particular offense that T.V. had previously engaged in.

Plaintiff fails to satisfy the strict "particular acts" requirement that is a threshold requirement for parental failure to control claims under Florida law. Since plaintiff fails to satisfy this threshold requirement, her claim must be dismissed. Additionally, since plaintiff does not satisfy this threshold requirement, it is unnecessary to also consider defendants' arguments regarding foreseeability and causation.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [70] is granted. A more factually complete version of today's ruling is being filed under seal. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiff dismissing plaintiff's cause of action with prejudice.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED: NOVEMBER / , 2007